FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jul 15, 2021

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| STEPHEN C.,[1]<br><br>        Plaintiff,<br><br>  vs.<br><br>KILOLO KIJAKAZI, ACTING COMMISSIONER OF SOCIAL SECURITY,[2]<br><br>        Defendant. | No. 2:20-cv-00285-MKD<br><br>ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT<br><br>ECF Nos. 16, 18 |

---

[1] To protect the privacy of plaintiffs in social security cases, the undersigned identifies them by only their first names and the initial of their last names. *See* LCivR 5.2(c).

[2] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted for Andrew M. Saul as the defendant in this suit. No further action need be taken to continue this suit. *See* 42 U.S.C. § 405(g).

ORDER - 1

Before the Court are the parties' cross-motions for summary judgment.  ECF Nos. 16, 18.  The parties consented to proceed before a magistrate judge.  ECF No. 6.  The Court, having reviewed the administrative record and the parties' briefing, is fully informed.  For the reasons discussed below, the Court denies Plaintiff's motion, ECF No. 16, and grants Defendant's motion, ECF No. 18.

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g); 1383(c)(3).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion."  *Id*. at 1159 (quotation and citation omitted).  Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance."  *Id.* (quotation and citation omitted).  In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation.  *Id.*

ORDER - 2

In reviewing a denial of benefits, a district court may not substitute its

judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152,

1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one

rational interpretation, [the court] must uphold the ALJ's findings if they are

supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674

F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an

ALJ's decision on account of an error that is harmless." *Id.* An error is harmless

"where it is inconsequential to the [ALJ's] ultimate nondisability determination."

*Id*. at 1115 (quotation and citation omitted). The party appealing the ALJ's

decision generally bears the burden of establishing that it was harmed. *Shinseki v.*

*Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within

the meaning of the Social Security Act. First, the claimant must be "unable to

engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which

has lasted or can be expected to last for a continuous period of not less than twelve

months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Second, the claimant's

impairment must be "of such severity that he is not only unable to do his previous

work[,] but cannot, considering his age, education, and work experience, engage in

any other kind of substantial gainful work which exists in the national economy."

42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. *Id.*

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. §§

404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. §§ 404.1520(d), 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work).  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(f), 416.920(f).  If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  In making this determination,

the Commissioner must also consider vocational factors such as the claimant's age, education, and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. *Id.*

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that 1) the claimant is capable of performing other work; and 2) such work "exists in significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

On April 3, 2017, Plaintiff applied both for Title II disability insurance benefits and Title XVI supplemental security income benefits alleging a disability onset date of January 19, 2017. Tr. 15, 62-63, 193-210. The applications were denied initially and on reconsideration. Tr. 106-09, 113-26. Plaintiff appeared before an administrative law judge (ALJ) on September 24, 2019. Tr. 33-61. On October 2, 2019, the ALJ denied Plaintiff's claim. Tr. 12-32.

At step one of the sequential evaluation process, the ALJ found Plaintiff, who met the insured status requirements through June 30, 2017, has not engaged in substantial gainful activity since January 19, 2017. Tr. 17. At step two, the ALJ found that Plaintiff has the following severe impairments: schizoaffective disorder, other affective disorder(s), and anxiety disorder(s). *Id.*

At step three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. Tr. 18. The ALJ then concluded that Plaintiff has the RFC to perform a full range of work with the following limitations:

> He can perform simple routine tasks [in] two-hour increments. He can have occasional superficial contact with the public, but working with the public should not be a focus of his job. He can work in the same room with coworkers, but without coordination of work activity. He can adapt to simple and few workplace changes.

Tr. 19.

At step four, the ALJ found Plaintiff is unable to perform any of his past relevant work. Tr. 25. At step five, the ALJ found that, considering Plaintiff's age, education, work experience, RFC, and testimony from the vocational expert, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as kitchen helper, laundry worker, and industrial cleaner. Tr. 26. Therefore, the ALJ concluded Plaintiff was not under a disability,

as defined in the Social Security Act, from the alleged onset date of January 19, 2017, through the date of the decision.  *Id.*

On June 17, 2020, the Appeals Council denied review of the ALJ's decision, Tr. 1-6, making the ALJ's decision the Commissioner's final decision for purposes of judicial review.  *See* 42 U.S.C. § 1383(c)(3).

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying him disability insurance benefits under Title II  and supplemental security income benefits under Title XVI of the Social Security Act.  Plaintiff raises the following issues for review:

1.  Whether the ALJ properly evaluated the medical opinion evidence; and

2.  Whether the ALJ properly evaluated Plaintiff's symptom claims. ECF No. 16 at 2.

## DISCUSSION

**A. Medical Opinion Evidence**

Plaintiff contends the ALJ erred in her consideration of the opinions of Phyllis Sanchez, Ph.D., and Kayleena Nelmark, Psy.D.  ECF No. 16 at 2-15.  As an initial matter, for claims filed on or after March 27, 2017, new regulations apply that change the framework for how an ALJ must evaluate medical opinion evidence.  *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017

ORDER - 8

WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. §§ 404.1520c, 416.920c.  The new regulations provide that the ALJ will no longer "give any specific evidentiary weight…to any medical opinion(s)…" *Revisions to Rules*, 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68; *see* 20 C.F.R. §§ 404.1520c(a), 416.920c(a).  Instead, an ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources.  20 C.F.R. §§ 404.1520c(a), (b), 416.920c(a) (b).  The factors for evaluating the persuasiveness of medical opinions and prior administrative medical findings include supportability, consistency, relationship with the claimant (including length of the treatment, frequency of examinations, purpose of the treatment, extent of the treatment, and the existence of an examination), specialization, and "other factors that tend to support or contradict a medical opinion or prior administrative medical finding" (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements").  20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5).

Supportability and consistency are the most important factors, and therefore the ALJ is required to explain how both factors were considered.  20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  Supportability and consistency are explained in the regulations:

(1) *Supportability.* The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

(2) *Consistency.* The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. §§ 404.1520c(c)(1)-(2), 416.920c(c)(1)-(2). The ALJ may, but is not required to, explain how the other factors were considered. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). However, when two or more medical opinions or prior administrative findings "about the same issue are both equally well-supported ... and consistent with the record ... but are not exactly the same," the ALJ is required to explain how "the other most persuasive factors in paragraphs (c)(3) through (c)(5)" were considered. 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

### 1. Dr. Sanchez

There are two February 2017 DSHS documents in the record; Plaintiff contends both documents were completed by Dr. Sanchez, ECF No. 16 at 4, while the ALJ found one of the documents was completed by Donita Weddle, a disability specialist, rather than Dr. Sanchez, Tr. 23-24. The document at issue is a DSHS review of medical evidence, and notes a referring disability specialist, Donita

ORDER - 10

Weddle, and lists Dr. Sanchez as the assigned contractor. Tr. 742. The document lists two medical reports, one of which is a February 21, 2017 examination by Dr. John Arnold, and the document states Dr. Arnold is a psychologist, and the comment box states "I extrapolated the ratings and limitations the best I could, based on the 2/21/17 notes. Please opine. Thanks." *Id.* The boxes below the comment box are incomplete, while the remainder of the questionnaire is completed. Tr. 742-44. There are no additional comments, and the document does not contain a signature line. Tr. 744. Defendant appears to concede that the form was completed by Dr. Sanchez or that Dr. Sanchez adopted the opinion, ECF No. 18 at 18, and as such, the opinion will be treated as an opinion rendered by Dr. Sanchez.

On February 28, 2017, Dr. Sanchez, a reviewing psychologist, reviewed some of Plaintiff's records and rendered an opinion on Plaintiff's functioning and eligibility for DSHS benefits. Tr. 318, 742-44. The first form states Plaintiff is "higher functioning than these ratings suggest particularly his cognition," notes a medical doctor did not fill the form out, and opines the one-year duration is "fine" as long as Plaintiff remains in mental health treatment. Tr. 18. In the second form, Dr. Sanchez found Plaintiff has schizoaffective disorder, and rule out bipolar one and unspecified anxiety disorder. Tr. 744. Dr. Sanchez opined Plaintiff has no to mild limitations in his ability to understand, remember, and persist in tasks by

following very short and simple instructions, learning new tasks, and performing routine tasks without special supervision; moderate limitations in his ability to understand, remember, and persist in tasks by following detailed instructions, adapting to changes in a work setting, making simple work-related decisions, being aware of normal hazards and taking appropriate precautions, asking simple questions or requesting assistance, setting realistic goals and planning independently; and marked limitations in his ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, communicate and perform effectively in a work setting, maintain appropriate behavior in a work setting, and complete a normal workday/workweek without interruptions from psychologically based symptoms. Tr. 743. Dr. Sanchez opined Plaintiff's overall severity rating is a four, and his functional symptoms are all rated as fours as well.[3] Tr. 744. The ALJ found Dr. Sanchez's opinions were unpersuasive, except to agree with the portions of the opinion that found Plaintiff had no to mild limitations. Tr. 24.

---

[3] While the questionnaire does not list the definitions of the numerical ratings, WAC 388-449-0035 provides the definition of the severity ratings, and defines a rating of four as marked.

ORDER - 12

First, the ALJ found Dr. Sanchez's opinions were not supported by the cited objective evidence. Tr. 24. Supportability is one of the most important factors an ALJ must consider when determining how persuasive a medical opinion is. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). The more relevant objective evidence and supporting explanations that support a medical opinion, the more persuasive the medical opinion is. 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). The only records Dr. Sanchez reviewed were a February 21, 2017 medical record from psychologist Dr. John Arnold, and a January 19, 2017 record from Mr. John Laughlin, a physician's assistant. Tr. 742. The ALJ noted Dr. Arnold's examination indicated Plaintiff had normal speech, memory, thought processes, and behavior, although he had a depressed affect and only fair concentration. Tr. 24 (citing Tr. 363-68). The ALJ found Dr. Arnold's examination provided an inadequate basis for limitations set forth in the opinion. Tr. 24. However, the ALJ did not acknowledge Plaintiff's reported hallucinations and delusions. Tr. 367.

The January 19, 2017 medical record discussed Plaintiff's reported symptoms including auditory hallucinations, impaired sleep, and spending most of his time in bed, and Plaintiff was noted as having a blunted affect, not engaging in any extra conversation, and he was anxious/worried, with only fair insight/judgment, although he had normal orientation, speech, language, fund of knowledge, thought processes, memory, and attention/concentration. Tr. 320-24.

ORDER - 13

The questionnaires do not cite to any other evidence to support the opinion that Plaintiff has multiple marked limitations. Although the two cited records contain some abnormalities, given the generally normal mental status examinations despite the reported hallucinations, the ALJ's finding that Dr. Sanchez's opinions were inconsistent with the cited objective evidence was a specific and legitimate reason, supported by substantial evidence, to reject the opinions. *See Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001); *Bray v. Comm'r of Soc. Sec. Admin.*, 554 1219, 1228 (9th Cir. 2009).

Second, the ALJ found Dr. Sanchez's opinions were inconsistent with the evidence of Plaintiff's improvement with treatment. Tr. 24. Consistency is one of the most important factors an ALJ must consider when determining how persuasive a medical opinion is. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). The more consistent an opinion is with the evidence from other sources, the more persuasive the opinion is. 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). At the time of Dr. Arnold's examination, Plaintiff reported he had only recently started treatment, which had been beneficial, and he reported being hopeful he would be able to work in the future. Tr. 24 (citing Tr. 363-68). The ALJ found Plaintiff had significant improvement after beginning treatment. Tr. 24. While Plaintiff had more significant symptoms prior to his alleged onset date, the ALJ noted Plaintiff found his psychiatric medications "very helpful," and Plaintiff reported

hallucinations were not a problem with his medications. Tr. 20. The mental status findings largely reflected normal mood, affect, speech, thoughts, memory, and concentration, and continued improvement with treatment. Tr. 23, 336, 358, 361, 371, 425. Plaintiff's symptoms generally improved when he was not putting himself in any situations that increased his symptoms. Tr. 510, 515. When Plaintiff increased his activities, by trying to work or socialize, he often saw an increase in his anxiety and hallucinations, but with ongoing treatment, he reported being able to manage the symptoms. Tr. 430, 436, 704, 724-25, 805, 807.

The ALJ found Dr. Sanchez's opinions were inconsistent with Plaintiff's "prolonged state of stability beginning around May 2017," which included Plaintiff socializing, exercising, and engaging in social activities, certification studies, and musical performances. Tr. 24. Plaintiff began to demonstrate more sustained improvement after May 2017; Plaintiff reported not experiencing intrusive thoughts nor other psychotic symptoms in May 2017, Tr. 531, and reported ongoing improvement with medication in the following months, Tr. 545, 657, 673, 757, 776. Plaintiff finished reading a book for a certification program, and reported going to the gym more, socializing more, writing and playing music, making videos to go with his music, cycling, exercising, and planning to attend college. Tr. 663, 693, 704, 718, 721, 732, 788. Beginning in the summer of 2017, several of Plaintiff's counseling sessions were cut short because "he is really doing

ORDER - 15

okay," and Plaintiff did not have any psychotherapy issues to talk about. Tr. 668. In March 2018, Plaintiff reported feeling more stable than he has felt in over seven years. Tr. 717. While Plaintiff had periods of ongoing symptoms, the ALJ reasonably found Plaintiff overall had sustained improvement. This was a specific and legitimate reason, supported by substantial evidence, to reject Dr. Sanchez's opinions. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004).

Third, the ALJ gave less weight to Dr. Sanchez's opinions than she gave to the opinions of State agency psychological consultants Michael Brown, Ph.D., and Kristine Harrison, Psy.D, because the other opinions were more persuasive, better supported, and more consistent with the evidence. Tr. 24. Consistency and supportability are the two most important factors when considering the persuasiveness of medical opinions. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Dr. Brown opined Plaintiff's mental health symptoms were projected to be non-severe within 12 months of the onset date. Tr. 74-75. Dr. Harrison opined Plaintiff had no more than moderate limitations in any area of functioning. Tr. 101-03. Both consultants opined there was insufficient evidence

to assess Plaintiff's functioning prior to January 2017.[4]  Tr. 68, 99-100.  The ALJ

found Dr. Brown and Dr. Harrison's opinions are more consistent with the

objective evidence and overall evidence than Dr. Sanchez's opinion.  Tr. 24.  As

discussed *supra,* the ALJ found Dr. Sanchez's opinion was inconsistent with the

objective medical evidence and Plaintiff's improvement with treatment.  The ALJ

also noted Plaintiff's activities of daily living demonstrate his improvement with

treatment, as Plaintiff was able to engage in musical performances, exercise, other

social activities, and study.  *Id.*

Plaintiff contends the ALJ erred in giving more weight to Dr. Brown and Dr.

Harrison's opinions, because the opinions were not consistent with one another.

ECF No. 16 at 7-8, 11-12.  In April 2017, Dr. Brown projected that Plaintiff's

symptoms would be non-severe by January 2018.  Tr. 74-75.  In June 2017, Dr.

Harrison reviewed additional medical records that demonstrated some ongoing

symptoms, and found Plaintiff had no more than moderate limitations based on the

evidence.  Tr. 97-100.  While Dr. Harrison found Plaintiff had some limitations

---

[4] Plaintiff's alleged an onset date of January 19, 2017, Tr. 194, which is also

reflected throughout the record, Tr. 15, 64, 227, however the analyses in the

disability determination explanations indicate an alleged onset date of June 15,

2013, Tr. 66, 73.

given the new evidence, both opinions are consistent with a finding of non-disability. The ALJ considered both Dr. Brown's and Dr. Harrison's opinion, and set forth reasoning for finding the opinions more persuasive than Dr. Sanchez's opinion. Tr. 24-25. Plaintiff also argues Dr. Brown and Dr. Harrison did not have access to additional medical records, including Dr. Nelmark's opinion and treatment records. ECF No. 16 at 12 (citing Tr. 557-61, 711-37, 745-814); ECF No. 19 at 3-4. However, the cited records demonstrate Plaintiff's improvement with treatment; Plaintiff reported his symptoms were largely under good control, and he was tolerating his medication well, and Plaintiff's mental status examinations were generally normal. Tr. 711-37, 749-58. Plaintiff reported socializing more, planning to go to college classes in person, and though his increased activities caused an increase in his symptoms, he was able to manage the symptoms and his provider considered Plaintiff's symptoms to be largely stable. Tr. 704-05, 707. Plaintiff also reported exercising more and going out for walks. Tr. 706. Although he reported auditory hallucinations at times, Plaintiff denied hallucinations at many appointments. Tr. 711-37, 749-58. In August 2018, Plaintiff reported having an absence of depression for six months and asked to decrease his mediation, Tr. 753, though he later needed to change his medication due to increased depression in May 2019, Tr. 782. In 2019, despite some ongoing thought disturbance, Plaintiff was noted as improved, and he had a normal mental

status examination. Tr. 770-71. The ALJ reasonably found Dr. Brown and Dr.

Harrison's opinions are more consistent with the evidence than Dr. Sanchez's

opinions. This was a specific and legitimate reason, supported by substantial

evidence, to reject Dr. Sanchez's opinions. *See Nguyen v. Chater*, 100 F.3d 1462,

1464 (9th Cir. 1996).

### 2. Dr. Nelmark

On May 3, 2018, Dr. Nelmark, a treating psychologist, rendered an opinion

on Plaintiff's functioning. Tr. 557-61. She diagnosed Plaintiff with

schizoaffective disorder, bipolar type. Tr. 560. Dr. Nelmark opined Plaintiff has

mild limitations in his ability to understand and remember simple instructions;

moderate limitations in his ability to carry out simple instructions; marked

limitations in his ability to make judgements on simple work-related decisions,

understand, remember, and carry out complex instructions, and interact

appropriately with the public, supervisors, and coworkers; and extreme limitations

in his ability to make judgements on complex work-related decisions and respond

appropriately to usual work situations and to changes in a routine work setting. Tr.

557-58. She further opined Plaintiff cannot be exposed to too much stimulation,

requires quiet and rest, cannot sustain energy longer than a one to two-hour period,

work would likely be too de-stabilizing and he is unable to work full-time, and she

is unsure how long she expects Plaintiff would be unable to work full-time.  Tr. 559-60.

On December 12, 2018, Dr. Nelmark, rendered another opinion on Plaintiff's functioning.  Tr. 745-48.  She again diagnosed Plaintiff with schizoaffective disorder.  Tr. 747.  Dr. Nelmark opined Plaintiff has slight limitations in his ability to understand, remember, and carry out short, simple instructions, and interact appropriately with the public and coworkers; moderate limitations in his ability to interact appropriately with supervisors; and marked limitations in his ability to understand and remember detailed instructions, carry out detailed instructions, make judgments on simple work-related decisions, respond appropriately to work pressures in a usual work setting, and respond appropriately to changes in a routine work setting.  Tr. 745-46.  She further opined Plaintiff has very poor attention/concentration/focus, he has unstable moods, is labile, and irritable under pressure and experiences fatigue, and he is unable to sustain mental energy longer than one to two hours.  Tr. 746.  Dr. Nelmark stated Plaintiff's disability began winter of 2010, per Plaintiff's report, and the condition is lifelong.  Tr. 747.  When presented only with the option to define the limitation as none, mild, marked, or extreme (notably, a moderate option is missing), Dr. Nelmark opined Plaintiff has marked limitations in his activities of daily living, mild limitations in social functioning, and marked limitations in concentration,

persistence, or pace. Tr. 748. The ALJ found Dr. Nelmark's opinions were unpersuasive. Tr. 24.

First, the ALJ found Dr. Nelmark did not sufficiently support her opinions with a detailed explanation. Tr. 24. Supportability is one of the most important factors an ALJ must consider when determining how persuasive a medical opinion is. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). The more relevant objective evidence and supporting explanations that support a medical opinion, the more persuasive the medical opinion is. 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). The ALJ noted Dr. Nelmark's "check-box form[s]" both stated her opinions were based on "observation during treatment, review of medical records" without further detail. Tr. 24. In the May opinion, Dr. Nelmark noted her observations and review of the medical records supported her opinions regarding Plaintiff's limitations, Tr. 557-59, but she did not give any other explanation for the opinions. She further explained Plaintiff had limitations in other capabilities, due to fatigue, concentration, difficulty understanding, and difficulty with social interactions. Tr. 558. She stated work would likely be de-stabilizing, but did not say why, and only provided Plaintiff's reported onset date rather than giving an opinion of when his limitations began. Tr. 558-60. In the December opinion, Dr. Nelmark again wrote her opinion was based on her observations and review of the medical records, and listed Plaintiff's additional limitations due to impaired

ORDER - 21

attention/concentration/focus, mood instability, and fatigue. Tr. 746. However, Dr. Nelmark also described the recent results of a mental status examination, and gave examples of Plaintiff's restrictions. Tr. 747-48. Any error in the ALJ's conclusion that Dr. Nelmark failed to provide a rationale for her opinions is harmless as the ALJ gave other supported reasons to reject the opinions. *See Molina,* 674 F.3d at 1115.

Second, the ALJ found Dr. Nelmark's opinions were inconsistent with her treatment records. Tr. 24. Consistency is one of the most important factors an ALJ must consider when determining how persuasive a medical opinion is. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). The ALJ noted that while Dr. Nelmark's records contain some abnormalities, such as a flat affect, they generally contain normal findings, including normal affect, behavior, grooming, eye contact, speech, psychomotor activity, thoughts, intelligence, and judgment. Tr. 24, 718-21, 724-26, 732-33. When Plaintiff asked Dr. Nelmark to complete a disability questionnaire in May 2018, Plaintiff reported everything was going well, he had a stable mood, and he reported joining a band. Tr. 24 (citing Tr. 724-25). At the May 2018 appointment, Plaintiff had a normal mental status examination except reported hallucinations and paranoia at times. Tr. 725. Plaintiff later reported to Dr. Nelmark on multiple occasions that he was busy with his band and music, including writing music and making music videos. Tr. 24 (citing Tr. 726, 732,

785, 788).  Although Plaintiff intermittently reported auditory hallucinations, mild paranoia, and mental fog, and had decreased concentration at some appointments, Tr. 731, 785, 787, he had intact cognition and concentration, and normal perception, at many appointments, Tr. 732-33, 766, 774, 777, 780.  Even during visits where Plaintiff reported experiencing some ongoing symptoms, Plaintiff reported increasing his activity, such as a visit where he reported spending more time on music, including arranging and composing music for a college band, beginning to play trombone and write music for the class, and despite reported auditory hallucinations, Plaintiff otherwise had a normal mental status examination.  Tr. 788.  This was a specific and legitimate reason, supported by substantial evidence, to reject Dr. Nelmark's opinion.  *See Holohan*, 246 F.3d at 1202; *Bray*, 554 at 1228.

Third, the ALJ found Dr. Nelmark's opinions were inconsistent with the opinions of State agency psychological consultants, Dr. Brown and Dr. Harrison. Tr. 24.  Consistency and supportability are the two most important factors when considering the persuasiveness of medical opinions.  20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  As discussed *supra,* the ALJ reasonably found Dr. Nelmark's opinions were not consistent with the objective evidence.  Like Dr. Sanchez's opinion, the ALJ reasonably found Dr. Brown and Dr. Harrison's opinions are more consistent with the evidence than Dr. Nelmark's opinion.  This

was a specific and legitimate reason, supported by substantial evidence, to reject Dr. Nelmark's opinion. *See Nguyen*, 100 F.3d at 1464. Plaintiff is not entitled to remand on these grounds.

## B. Plaintiff's Symptom Claims

Plaintiff faults the ALJ for failing to rely on clear and convincing reasons in discrediting his symptom claims. ECF No. 16 at 15-18. An ALJ engages in a two-step analysis to determine whether to discount a claimant's testimony regarding subjective symptoms. SSR 16–3p, 2016 WL 1119029, at *2. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (quotation marks omitted). "The claimant is not required to show that [the claimant's] impairment could reasonably be expected to cause the severity of the symptom [the claimant] has alleged; [the claimant] need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations omitted). General findings are insufficient; rather, the ALJ must identify what

symptom claims are being discounted and what evidence undermines these claims. *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently explain why it discounted claimant's symptom claims)). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Factors to be considered in evaluating the intensity, persistence, and limiting effects of a claimant's symptoms include: 1) daily activities; 2) the location, duration, frequency, and intensity of pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and 7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. §§ 404.1529(c), 416.929(c). The ALJ is instructed to "consider all of the evidence in an individual's record," to "determine how symptoms limit ability to perform work-related activities." SSR 16-3p, 2016 WL 1119029, at *2.

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the evidence.  Tr. 20.

### 1.  Inconsistent Objective Medical Evidence

The ALJ found Plaintiff's symptom claims were inconsistent with the objective medical evidence.  Tr. 20-21.  An ALJ may not discredit a claimant's symptom testimony and deny benefits solely because the degree of the symptoms alleged is not supported by objective medical evidence.  *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989); *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005).  However, the objective medical evidence is a relevant factor, along with the medical source's information about the claimant's pain or other symptoms, in determining the severity of a claimant's symptoms and their disabling effects.  *Rollins*, 261 F.3d at 857; 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2).

The ALJ found that the medical records during the relevant period do not support Plaintiff's contention of disabling mental health limitations.  Tr. 20.  Plaintiff began seeing treatment in January 2017, and reported finding treatment helpful.  *Id.*  The ALJ noted Plaintiff had some ongoing symptoms, such as an

ORDER - 26

anxious affect, and reported hallucinations at times, but he otherwise generally had

normal mental status examinations. Tr. 20-22. At many appointments, even when

Plaintiff reported mental fatigue or hallucinations, Plaintiff had an otherwise

normal mental examination. Tr. 714, 724-25, 788. While Plaintiff alleges

significant sedation from his medication and impairments, the ALJ noted Plaintiff

reported improvement in the sedation over time, and Plaintiff frequently denied

any medication side effects. Tr. 21 (citing Tr. 525-28, 541). Plaintiff also reported

mental fog or impaired cognitive functioning and tremors due to his medications,

but later reported improvement in the side effects. Tr. 421, 699, 711. Plaintiff

argues the ALJ failed to point to specific inconsistencies between the objective

evidence and Plaintiff's claims, ECF No. 16 at 17, however the ALJ pointed to

multiple inconsistencies discussed herein. While Plaintiff's symptoms waxed and

waned, the ALJ's finding that the relatively benign objective findings was out of

proportion with and did not corroborate Plaintiff's report of severe restrictions is

reasonable. This was a clear and convincing reason, when combined with the other

reasons offered, to discount Plaintiff's symptom reports.

### 2. *Improvement with Treatment*

The ALJ found Plaintiff's symptom claims were inconsistent with Plaintiff's

improvement with treatment. Tr. 21-22. The effectiveness of treatment is a

relevant factor in determining the severity of a claimant's symptoms. 20 C.F.R. §§

404.1529(c)(3), 416.913(c)(3); *see Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006); *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (a favorable response to treatment can undermine a claimant's complaints of debilitating pain or other severe limitations).

The ALJ found Plaintiff had improvement in his mental health symptoms with treatment, and had sustained improvement beginning May 2017. Tr. 22. At the time of Plaintiff's alleged onset date, he reported mood instability, anxiety, impaired concentration/focus, impaired sleeping, and auditory hallucinations. Tr. 320-23. Plaintiff reported improvement throughout the relevant period, including stating he was doing well, reporting improved sleep, a decrease in hearing voices, and reporting that his symptoms were controlled by medication. Tr. 21, 336, 380, 545, 657, 668, 689, 699, 711, 724-25, 757, 776, 807. Plaintiff had multiple medication adjustments, requiring changing medications and dosages to better control his symptoms while minimizing side effects. Tr. 323, 421, 715, 753, 776. In the summer of 2017, Plaintiff reported he was not having any intrusive symptoms, he was not having any significant side effects, and he had improved sleep, focus, and concentration. Tr. 545, 657, 673, 689, 693. In May 2018, Plaintiff reported he felt more stable than he had felt in over seven years. Tr. 717. Plaintiff reported continued delusions and paranoia in September 2018, but reported he was coping with the symptoms, and he had a normal mental status

examination.  Tr. 788.  Plaintiff reported increasing his activities, including socializing more, reading, exercising, and playing music.  Tr. 438, 704, 732, 788, 805.  Plaintiff argues the ALJ failed to consider the cyclical nature of Plaintiff's symptoms, ECF No. 16 at 17-18, however while Plaintiff had periods of increased symptoms, Plaintiff overall demonstrated continuing improvement over time.  On this record, the ALJ reasonably found Plaintiff's symptoms when treated were not as severe as Plaintiff claimed.  This was a clear and convincing reason to discount Plaintiff's symptom reports.

### 3. *Activities of Daily Living*

The ALJ found Plaintiff's activities of daily living were inconsistent with Plaintiff's symptom claims.  Tr. 22.  The ALJ may consider a claimant's activities that undermine reported symptoms.  *Rollins*, 261 F.3d at 857.  If a claimant can spend a substantial part of the day engaged in pursuits involving the performance of exertional or non-exertional functions, the ALJ may find these activities inconsistent with the reported disabling symptoms.  *Fair*, 885 F.2d at 603; *Molina*, 674 F.3d at 1113.  "While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discount a claimant's symptom claims when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting" or when activities "contradict claims of a totally debilitating impairment."  *Molina*, 674 F.3d at 1112-13.

The ALJ found Plaintiff's activities demonstrate he can maintain concentration and pace for at least simple tasks, he can tolerate routine social interaction, and he can handle a variety of tasks and chances in routine. Tr. 22. The ALJ noted Plaintiff engaged in musical performances with his band, wrote music, made videos to go with the music, participated in a community college music class, and was able to drive, shop, prepare meals, meet up with friends at their homes or at bars, bicycle, skateboard, exercise, and watch television. *Id.* (citing, e.g., 704-06, 725, 732, 749, 785). Plaintiff also began studying for a technology support certification. Tr. 22, 689, 693. While Plaintiff testified he is largely sedentary, he reported to providers that he was walking a lot, going to the gym daily, and exercising regularly. Tr. 22, 438, 531, 549, 663, 704-06. Plaintiff argues his activities do not demonstrate he could sustain work, ECF No. 16 at 17-18, however the ALJ identified multiple inconsistencies between Plaintiff's allegations and his activities. On this record, the ALJ reasonably concluded that Plaintiff's activities of daily living were inconsistent with Plaintiff's symptom claims. This finding is supported by substantial evidence and was a clear and convincing reason to discount Plaintiff's symptom complaints. Plaintiff is not entitled to remand on these grounds.

ORDER - 30

# CONCLUSION

Having reviewed the record and the ALJ's findings, the Court concludes the ALJ's decision is supported by substantial evidence and free of harmful legal error. Accordingly, **IT IS HEREBY ORDERED**:

1. The District Court Executive is directed to substitute Kilolo Kijakazi as Defendant and update the docket sheet.

2. Plaintiff's Motion for Summary Judgment, **ECF No. 16**, is **DENIED**.

3. Defendant's Motion for Summary Judgment, **ECF No. 18**, is **GRANTED**.

4. The Clerk's Office shall enter **JUDGMENT** in favor of Defendant.

The District Court Executive is directed to file this Order, provide copies to counsel, and **CLOSE THE FILE.**

DATED July 15, 2021.

*s/Mary K. Dimke*
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE